## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MINNESOTA

**JACOB W. JUVLAND**, on behalf of himself
and all others similarly situated,

               Plaintiff,

v.

**ALLURA USA LLC, PLYCEM USA LLC
D/B/A ALLURA, PLYCEM USA, INC.,
ELEMENTIA USA, INC., and
ELEMENTIA S.A.B. De. C.V.,**

               Defendants.

_____

CASE NO.:

**CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

## CLASS ACTION COMPLAINT

Plaintiff Jacob W. Juvland, by and through the undersigned counsel, brings this action on his own behalf and on behalf of a class of persons and entities defined herein against Defendants Allura USA LLC; Plycem USA LLC doing business as Allura; Plycem USA, Inc., Elementia U.S.A., Inc., and Elementia S.A.B. De. C.V., (collectively "Defendants"). Upon information and belief and based on the investigation of counsel to date, Plaintiff alleges the following:

## NATURE OF CASE

1.      This is a class action asserting unfair and deceptive trade practices in violation of the Minnesota Consumer Fraud Act, violations of the Minnesota Uniform Deceptive Trade Practices Act, violations of the Minnesota Unlawful Trade Practices Act, negligence, breach of implied warranty of merchantability, breach of implied

warranty of fitness for a particular purpose, fraudulent misrepresentation, and fraudulent concealment. For these claims, Plaintiff, on his behalf and on the behalf of others similarly situated, seeks damages and declaratory relief in connection with defective fiber cement siding (the "Siding") designed, manufactured, marketed, advertised, and sold by Defendants.

2.      Defendants market, advertise, sell, and deliver the Siding in the State of Minnesota.

3.      The Siding on Plaintiff's and Class Members' homes suffers from an inherent defect resulting in the Siding cracking, breaking, splitting, pulling away from the home, and warping.

4.      The damages begin to manifest just a few short years after the Siding has been installed, and eventually create paths for water intrusion and leakage into Plaintiff's and Class Members' homes.

5.      In conjunction with each sale, Defendants represent, market, and advertise that the Siding is durable, will last for 50-years, is fit for the ordinary purpose for which such goods were used, and is free from defects in materials and workmanship.

6.      Defendants knew or should have known that the Siding was defective in design, not fit for its ordinary and intended use, and failed to perform in accordance with the advertisements, marketing materials, and other representations disseminated by Defendants.  Moreover, the Siding failed to perform to the reasonable expectations of ordinary consumers, and fails prematurely.

7.    The Siding is defective and fails to perform properly both at the Plaintiff's residence and at Class Members' residences by cracking, chipping, flaking, breaking or splitting, and creating leakage paths in addition to consequential damages to other property, including the adjoining finishes and walls of the residences.

8.    In the siding industry, it is common for manufacturers to use grain and silica in making and manufacturing their fiber cement siding.

9.    Other manufacturers use fly ash, which may be integrated successfully when not used in excess.

10.    Upon information and belief, Defendants used excessive amounts of fly ash in their formula for manufacturing the Siding, instead of the more common grain and silica used by other manufacturers of fiber cement siding.

11.    Upon information and belief, Defendants were aware that the addition of excessive fly ash causes the Siding to become too brittle to be used as an exterior building product, resulting in the cracking and breaking described throughout this Complaint.

12.    As the Siding is exposed to typical weather cycles - both hot and cold – it experiences increased expansion and contraction due to excess moisture in the product, and the Siding begins to crack and break given the brittleness caused by the defective condition.

13.    Defendants represent that their Siding will last 50-years; however, the Siding is so brittle that it begins to fail within the first five (5) years of its service life, and

all Siding manufactured, produced, and sold by Defendants will eventually fail prior to the represented and anticipated useful service life of 50 years.

14.    Defendants fail to warn Siding purchasers, installers, or users of the risks of failure described herein resulting from the use of excessive fly ash when manufacturing the Siding.

15.    The defect exists at the time the Siding leaves the factory. Failure can manifest early into its service life after repeated exposure to regular weather patterns wears on the brittle Siding, causing it to crack, split, warp, and pull away from the homes.

16.    The Siding has been sold and installed on thousands of homes across the country, including homes across Minnesota.

17.    A large number of Minnesota homeowners, including Plaintiff, have suffered consequential damages as a result of the defective Siding.

18.    Defendants have been put on notice of the Defect in their Siding, including the widespread nature of the Defect in Minnesota, by a number of homeowners.

19.    In response to the complaints regarding their Siding, Defendants represented to Plaintiff and to Class Members that the damages are not from a defect in the Siding but rather from installation errors.

20.    Upon information and belief, Defendants continue to engage in this pattern of misrepresentation in response to complaints about the Siding.

21.    The defect is the result of Defendants' conduct, including fundamental design, engineering, and manufacturing errors well within Defendants' area of expertise in the production of fiber cement building products.

22.    Defendants knew or should have known that the defect was present at the time the products left their control, not only because of their expertise regarding the Siding and testing of the Siding, but also because of the complaints and notices of the defect that they had received from homeowners, installers, and builders about the short service life of the Siding.

23.    The defect reduces the effectiveness and performance of the Siding and renders the Siding unsuitable as an exterior building product, for which it is marketed and advertised.

24.    As a result of the Defect and Defendants' conduct, Plaintiff and members of the Class have suffered damages to their Siding and their homes, and by having to repair or replace their Siding decades prior to the expected and marketed useful life of the Siding.

25.    Plaintiff and Class Members would not have purchased the Siding or the homes with the Siding installed, had they been aware that the Siding was defective and would prematurely fail.

26.    Consequently, as a result of the Defect, Plaintiff and members of the Class have incurred and will incur thousands of dollars in damages to replace the Siding and make repairs due to cracking, splitting, warping, and eventual moisture intrusion.

## **JURISDICTION AND VENUE**

27.    This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1332(d)(2) and the Class Action Fairness Act, in that (i) there is complete diversity, (ii) the amount in controversy exceeds $5,000,000.00 exclusive of interests and

costs, and (iii) there are 100 or more members of the proposed Plaintiff Class.

28.     Venue is proper in this District, pursuant to 28 U.S.C. §1391, because Plaintiff resides in this Judicial District, and a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this Judicial District.

29.     In addition, Defendants do business and/or transact business in this Judicial District, and therefore, are subject to personal jurisdiction in this Judicial District and reside here for venue purposes.

## THE PARTIES

30.     Plaintiff Jacob W. Juvland is a citizen and resident of Chisago County, Minnesota.

31.     Defendant Allura USA LLC ("Allura USA") is a subsidiary of Plycem USA LLC d/b/a Allura ("Allura") and Plycem USA, Inc. ("Plycem USA"), with a principal place of business in the State of Texas, and Allura USA transacts and conducts business in Minnesota and has done so at all times relevant to this Complaint.

32.     Specifically, Allura USA manufactures, warrants, advertises, and sells defective fiber cement Siding. The Siding was installed on Plaintiff's home. It was and continues to be installed on hundreds and potentially thousands of Class Members' homes in Minnesota and the United States. Defendant Allura is a corporation organized and existing under the laws of the State of Delaware with a principal place of business in the State of Texas. Allura transacts and conducts business in Minnesota and has done so at all times relevant to this Complaint.

33.     Defendant Plycem USA Inc. is a corporation organized and existing under

the laws of the State of Georgia, with a principal place of business in the State of Texas. Plycem USA Inc. transacts and conducts business in Minnesota and has done so at all times relevant to this Complaint.

34.    Defendant Elementia USA, Inc. ("Elementia USA"), is a corporation organized and existing under the laws of the State of Delaware with a principal place of business in the State of Texas. Elementia USA transacts and conducts business in Minnesota and has done so at all times relevant to this Complaint.

35.    Elementia, S.A.B. De. C.V. ("Elementia Mexico") is a corporation organized and existing under the laws of Mexico.  Elementia Mexico transacts and conducts business in Minnesota and has done so at all times relevant to this Complaint. Elementia Mexico is the parent company of Allura USA, Plycem USA, and Elementia USA, and owns and operates the Building Systems Division, which includes Allura USA, Plycem USA, and Elementia USA, which manufactures and distributes the Siding.

36.    At all times relevant herein, Elementia USA, Plycem USA Inc., Allura, and Allura USA jointly transacted and conducted business in Minnesota and continues to do so today.

37.    Defendants are the agents and/or alter egos of each other and the corporate interests of Defendants amalgamated so that they, in effect, operated as one and the same entity.

38.    Defendants used, commingled, and combined their resources to design, develop, manufacture, market, and sell the fiber cement Siding at issue.

39.    At all times relevant herein, Defendants engaged in actual and/or *de facto*

joint ventures in relation to the design, development, manufacture, marketing, and sale of the fiber cement Siding at issue.

## PLAINTIFF JUVLAND'S EXPERIENCE

40.    The defective Siding is installed on Plaintiff's home, located at 11445 Latham Lane, Chisago City, Minnesota (the "Latham Lane home").

41.    In 2013, the Latham Lane home was constructed and the defective Siding was installed.

42.    In the spring of 2016, Plaintiff and his wife began searching for a home to purchase.  After viewing numerous homes, Plaintiff and his wife selected the Latham Lane home to purchase from the original owner, in part, due to what appeared to be construction of the home using superior quality building materials.

43.    In March of 2016, Plaintiff's home buyer's inspection report identified only "a few pieces of siding cracked," and noted that the condition of the Siding was "Satisfactory."  Believing the condition to be minor and the Siding to be of good quality, Plaintiff and his wife moved forward with the purchase of the home in May of 2016, and simply caulked the area identified in the inspection report.   Plaintiff and his wife believed the condition had been remedied.

44.    Just two (2) years later, in the summer of 2018, Plaintiff noticed that there was widespread cracking throughout the Siding boards on all sides of his home and that the Siding had begun to warp and pull away from the home.

45.    Plaintiff contacted the builder of the home, who informed him that the Siding was manufactured by Allura.  The builder provided Plaintiff with the requisite

receipt for the original purchase of the Siding from Menards.

46.    On July 17, 2018, Plaintiff filed a claim with Allura, notifying them that the "[P]roduct is completely cracking threw [sic] vertically and is falling off house in some places or warping out of place."  In addition to the claim form, Plaintiff submitted photographs and a receipt for the original purchase of the Siding.

47.    On August 15, 2018, Plaintiff received a letter from Defendants' Product Compliance Adviser, Chris Dickerson.  In the letter, Defendants denied Plaintiff's claim, offered no repair, replacement, or other remedy, and further represented:

> A review of photographs you submitted indicate that there are no warrantable conditions or manufacturing defects with the Allura siding material installed on your home… From the photos you provided, there are installation deviations which are likely the cause of your concerns.

48.    When Defendants represented to Plaintiff that the damage was not due to a defect, but was due to installation errors, Defendants knew those statements to be false but made them with the intent to conceal the truth about the defective nature of the Siding.

49.    Upon information and belief, Defendants' response to Plaintiff is nearly identical to the misrepresentations made to hundreds, if not thousands, of other homeowners who have complained of their Siding cracking, breaking, falling off, and warping.

50.    Class members who have not complained to Defendants similarly have not been informed by Defendants regarding the truth about the defective nature of the Siding.

51.    After Defendants failed to repair, replace, or offer any remedy in response

to Plaintiff's notice of damage, Plaintiff acquired several estimates to replace the five (5) year old defective Siding.

52.     After performing research about the premature failure of Defendants' Siding, Plaintiff learned of the numerous other homeowners experiencing similar problems.  Having no other remedy available, Plaintiff brings this lawsuit on behalf of himself and others similarly situated.

## CLASS ACTION ALLEGATIONS

53.     Plaintiff brings this action individually and as a class action pursuant to Fed. R. Civ. P. 23(a), 23(b)(2), and 23(b)(3) on behalf of the following Classes:

> All persons in the United States who own structures on which Defendants' fiber cement Siding is or was installed (the "Nationwide Class").

54.     Plaintiff further brings this action against individually and as a class action pursuant to Fed. R. Civ. P. 23(a), 23(b)(2), and 23(b)(3) on behalf of the following Subclass:

> During the fullest period allowed by law, all persons and entities that own structures within the State of Minnesota on which Defendants' fiber cement Siding is or was installed (the "Minnesota Subclass").

Excluded from the Classes are: (a) any judges presiding over this action and members of their immediate families; (b) any members of the judges' staff; (c) Defendants, including any officer, director, or employee of Defendants; (d) any parent company, subsidiary, successor, or assign of Defendants; (e) any entity in which Defendants have a controlling interest or which has a controlling interest in Defendants;

Defendants' legal representatives; (f) anyone employed by counsel in this action; and (g) all persons who properly execute and file a timely request for exclusion from the Classes.

55.    *Numerosity*: The Classes are composed of hundreds or thousands of persons geographically dispersed throughout the state of Minnesota, the joinder of whom in one action is impractical. Moreover, upon information and belief, the members of the Classes are ascertainable and identifiable from Defendants' records or identifying marks on the Siding.

56.    *Commonality*: Questions of law and fact common to the Classes exist as to all members of the Class and predominate over any questions affecting only individual members of the Class. These common legal and factual issues include, but are not limited to the following:

a.    Whether the Siding is defective;

b.    Whether the Siding prematurely fails;

c.    Whether Defendants were negligent in the design and manufacture of the Siding;

d.    Whether the Siding has not performed or will not perform in accordance with the reasonable expectations of ordinary consumers;

e.    Whether Defendants knew or should have known of the Defect;

f.    Whether Defendants concealed from consumers and/or failed to disclose the Defect to consumers;

g.    Whether Defendants breached the implied warranty of merchantability by failing to disclose the defect in the Siding and by continuing to sell

the defective Siding even after it knew or should have known of the Defect;

h.      Whether Plaintiff and Class Members are entitled to compensatory damages, including, among other things: (i) compensation for all out-of-pocket monies expended for replacement of Siding and/or installation costs; (ii) the failure of consideration in connection with and/or difference in value arising out of the variance between the Siding as warranted and the Siding containing the Defect; and (iii) the diminution of resale value of the structures containing the Siding resulting from the Defect.

i.      Whether Plaintiff and the Class Members are entitled to replacement of their defective Siding with non-defective Siding;

j.      Whether Plaintiff and Class Members are entitled to replacement and repair costs associated with damage caused to their property, other than the Siding; and

k.      Whether Defendants falsely advertised and marketed the Siding to consumers, including builders, installers, distributors, and home owners.

57.    *Typicality*:  Plaintiff's claims are typical of the claims of members of the Classes as all such claims arise out of Defendants' conduct in designing, manufacturing, marketing, advertising, warranting, and selling the defective Siding; Defendants' conduct in concealing the Defect; and/or Plaintiff's and Class Members' purchase of home(s) with the defective Siding.

58.    *Adequate Representation*: Plaintiff will fairly and adequately protect the interests of the members of the Classes and has no interests antagonistic to those of the Classes. Plaintiff has retained counsel experienced in the prosecution of complex class actions, including consumer class actions involving product liability and product design defects.

59.    *Predominance and Superiority*:    This class action is appropriate for certification because questions of law and fact common to the members of the Classes predominate over questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of this controversy, since individual joinder of all members of the Classes is impracticable.

60.    Should individual Class Members be required to bring separate actions, this Court and courts throughout Minnesota and the country would be confronted with a multiplicity of lawsuits burdening the court system while also creating the risk of inconsistent rulings and contradictory judgments.

61.    In contrast to proceeding on a case-by-case basis, in which inconsistent results will magnify the delay and expense to all parties and the court system, this class action presents far fewer management difficulties while providing unitary adjudication, economies of scale and comprehensive supervision by a single court.

## COMMON FACTUAL ALLEGATIONS

62.    Upon information and belief, Defendants have sold, directly or indirectly (through dealers and other retail outlets), thousands of units of Siding nationwide and in the State of Minnesota.

63.     Defendants hold themselves out to both the construction industry and the public at large as being providers of superior, quality, and durable products, including the fiber cement Siding that is the subject of this litigation.

64.     At all times relevant herein, Defendants were engaged in the design, manufacturing, marketing, sale, supply, and delivery of the fiber cement Siding in the State of Minnesota.

65.     At all times relevant herein, Defendants designed, manufactured, marketed, sold, supplied and distributed the Siding.

66.     Upon information and belief, Defendants use excessive amounts of fly ash in the Siding instead of the more common grain and silica used by other manufacturers of fiber cement siding.

67.     Fly ash is an industrial by-product of coal burning power plants and costs less than cement. Defendants' use of fly ash lowers the cost of manufacturing the Siding, given that Defendants could use less concrete in the Siding.

68.     However, Defendants' use of excessive fly ash in its design and/or formulation causes the Siding to be defective. The Defect causes the product to be brittle and unable to withstand normal weather cycles, including expansion and contraction during temperature variances.

69.     Upon information and belief, Defendants knew that the addition of excessive fly ash into their Siding would cause the product to be too brittle for use as an exterior building product.

70.     As the product is too brittle to resist normal weather cycles and typical use,

the Siding cracks, breaks, falls off, and warps decades before the end of its expected service life.

71.    Specifically, Defendants represent to the public that the Siding is a durable exterior building product, superior in many ways to alternative products, and will last for at least 50-years.

72.    At all times material hereto, Defendants marketed and represented:[1]

    a.    "Combining the appearance and workability of wood with the durability of specially formulated fiber cement, Allura Lap Siding not only looks great but lasts considerably longer than traditional exterior wall cladding or vinyl siding."

    b.    "Unlike wood, vinyl and other traditional building materials, Allura Fiber Cement products resist damage from hail or termite attacks, resist rot, are non-combustible, and free from manufacturing defects."

    c.    "When it comes to the natural look you want with none of the hassles, Allura Fiber Cement products are all you need. • Durable, engineered to endure harsh weather & high wind climates • Non-combustible, Class A fire rating • Superior aesthetics • Factory Pre-Primed • Distinctive, more realistic textures • Best ROI for homeowners* for 8 years in a row."

    d.    "It won't rot, warp or splinter and is designed to significantly outperform wood in every way."

73.    Defendants market the Siding as durable, and as offering long-lasting protection for a specified life of 50-Years.

74.    Further, Defendants market the Siding as having withstood third-party testing, and as compliant with industry standards and building codes.

75.    As discussed herein, the Siding has early and severe deterioration, requiring unexpected maintenance and premature repair and replacement.

---

[1] https://www.allurausa.com

76.    The Siding prematurely fails, causing damage to the underlying structures and other property of Plaintiff and members of the Classes. Moreover, the Siding failing lowers the value of the property.

77.    All of Defendants' Siding is uniformly defective such that Plaintiff's and Class Members' Siding is prematurely failing decades prior to the time period advertised, marketed, and guaranteed by Defendants or otherwise expected by ordinary consumers purchasing the Siding.

78.    The manifestations of the Defect present in the Siding are so severe that Plaintiff and Class Members must repair or replace their siding sooner than reasonably expected by ordinary consumers who purchase siding generally and by consumers who purchased the Siding in particular.

79.    As a result of the Defect and failures alleged herein, Plaintiff and the Class have suffered actual damages.

80.    The above-described Defect occurs due to the fundamental design, engineering, and manufacturing errors, which are or should be within Defendants' expertise.

81.    Because the Siding cracks, prematurely degrades, otherwise fails, and permits water intrusion, it violates building codes and industry standards.

82.    The above-described Defect exists at the time the Siding leaves the factory.

83.    Failure of the Siding begins upon installation and continues during repeated and prolonged exposure to weather and ordinary use; however, the defect is latent and cannot be reasonably discovered by Plaintiff or Class Members until several years later

16

when the damages manifest and become widespread.

84.    The Siding on Plaintiff's and Class Members' homes has and will continue to fail prematurely compared to the time expected by ordinary consumers, the time marketed by Defendants, and the time represented by Defendants.  This has and will result in and require Plaintiff and Class Members to expend thousands of dollars to repair the damage associated with the Siding, and to prevent such damage from continuing into their homes and to prevent water intrusion into their home due to defects in the siding.

85.    Defendants knew or reasonably should have known the Siding is defective as designed and manufactured such that the product fails decades prior to its expected service life.

86.    The outward manifestation of the Siding deterioration and deformation is cracking, breaking, splitting, chipping, deterioration, and falling off the home.

87.    At the extreme, these conditions permit paths for leakage through the Siding and infiltrating the home, including the sheathing, framing components, and eventually the interior of the home.

88.    Consequently, the Siding does not perform in accordance with the representations of Defendants, the reasonable expectations of consumers, and is simply not a suitable building product to be installed on houses or buildings.

89.    Upon information and belief, Defendants have received thousands of complaints alleging a manufacturing or design defect in the Siding, which are supported by photographs and inspections.

90.    Upon information and belief, Defendants engage in a pattern of misrepresenting the cause of the damage to be installation errors, and further representing that no defect exists in the Siding.

91.    Despite receiving a litany of complaints from consumers, such as those by Plaintiff and other members of the Classes, Defendants have refused to convey effective notice to consumers about the Defect and refused to fully repair damage caused by the premature failure of the Siding.

92.    Defendants' response to customers' complaints and other requests for assistance and compensation is woefully inadequate under these circumstances in that it fails to provide Plaintiff or Class Members with adequate relief.

93.    Defendants' uniform representations to Plaintiff and the Classes that the Siding Defect does not represent a design or manufacturing defect or that the problems were caused by improper installation or some other mishandling, constitute affirmative misrepresentations of material fact in light of the known Defect inherent in the Siding purchased by Plaintiff and the Class.

94.    Such representations serve to conceal the true nature of Defendants' defective Siding.

95.    At all relevant times, Defendants had a duty to disclose to Plaintiff and Class Members that the Siding was defective, prone to foreseeable and uniform problems, such as the problems described herein, and otherwise was inherently flawed in its design such that the Siding was not suitable for use as an exterior building material.

96.    Because the Defect in the Siding are latent and not detectable at the

time of purchase until manifestation, Plaintiff and Class Members were not and are not reasonably able to discover their Siding was and is defective, despite the exercise of due diligence.

97.    Because of the relatively small size of the typical individual Class Member's claims and because most homeowners and/or property owners have only modest resources, it is unlikely that individual Class Members could afford to seek a full and fair recovery against Defendants regarding the Defect on their own.

98.    This is especially true in light of the size and resources of Defendants, and a class action is, therefore, the only reasonable means by which Class Members can obtain relief from these Defendants.

99.    Plaintiff seeks to recover, for himself and for the Classes, at least, the costs of repairing the damage to their property and replacing their Siding, and injunctive relief requiring Defendants to pay for materials and labor to replace their defective Siding.

100.    Despite knowing of the Defect, Defendants have not notified all purchasers of homes containing the Defendants' Siding of the Defect or provided uniform relief.

101.    Plaintiff and Class Members have not received the value for which they or their builders bargained when they purchased the homes containing the Siding.

102.    There is a difference in value between the Siding as sold, and the Siding containing the Defect.

103.    The value of structures containing the Siding has diminished as a result of the Defect.

104.    All conditions precedent for filing this Complaint have been satisfied.

105.    This Complaint has been filed prior to the expiration of any applicable statutes of limitations or statutes of repose.

## ESTOPPEL FROM PLEADING AND TOLLING OF APPLICABLE STATUTES OF LIMITATIONS

106.    Defendants are estopped from relying on any statutes of limitation or repose by virtue of its acts of fraudulent concealment.

107.    Upon information and belief, Defendants have known of the Defect in the Siding for years and has concealed it from owners, installers, and builders and/or failed to alert the owners of the defective nature of the Siding.

108.    As described fully in this Complaint, Defendants represented that their Siding would last at least 50-Years, when Defendants knew such representations were not true.  Further, these representations were made while concealing the true cause of the damages, which is the defective condition of the Siding.

109.    Also, as described fully in this Complaint, when Defendants were notified of problems with their Siding, by the Plaintiff and Class Members, Defendants affirmatively misrepresented that the cause of the damage was due to installation errors and was not a result of any defect with the Siding.

110.    These affirmative representations and acts were done knowingly by Defendants, and with the design to prevent, and which has prevented, discovery of the defective nature of the Siding.

111.    Defendants' statements, words, and acts were made in order to suppress the

truth about the defective nature of the Siding and renders the concealment fraudulent.

112.    Given Defendants' failure to disclose this known but non-public information about the defective nature of the Siding – information over which it had exclusive control – and because Plaintiff and Class Members therefore could not reasonably have known that the Siding was defective, Defendants are estopped from relying on any statutes of limitations or repose that might otherwise be applicable to the claims asserted herein.

**COUNT I**
**UNFAIR AND DECEPTIVE TRADE PRACTICES IN VIOLATION OF**
**MINNESOTA CONSUMER FRAUD ACT**
**(MINN. STAT. § 325F., *et seq.*)**

113.    Plaintiff individually and on behalf of all others similarly situated, adopts and incorporates by reference all allegations contained in all prior paragraphs as though fully set forth herein.

114.    Minn. Stat. § 325F.69, Subdivision 1 provides:

> The act, use, or employment by any person of any fraud, false pretense, false promise, misrepresentation, misleading statement or deceptive practice, with the intent that others rely thereon in connection with the sale of any merchandise, whether or not any person has in fact been misled, deceived, or damaged thereby, is enjoinable as provided in Section 325F.70.

115.    Defendants sold merchandise in the form of Siding to Plaintiff and Class Members.

116.    Defendants' business practices, in manufacturing, warranting, advertising, marketing and selling their Siding, of misrepresenting that: (1) their Siding would be free

from defects; (2) their Siding would last 50-Years; and (3) reported problems with Siding were not caused by a defect, even though Defendant knew and had substantial evidence to the contrary, constitute the use of fraud, false promises, misrepresentations, misleading statements and deceptive practices and, thus, constitute multiple, separate violations of Minn. Stat. § 325F.69.

117.    Defendants' business practices, in manufacturing, warranting, advertising, marketing and selling their Siding while concealing, failing to disclose, suppressing or omitting material information, including the Defect in the Siding and Defendants' knowledge of the Defect, while continuing to misrepresent their Siding as products that are free of defects, constitute the use of fraud, false promises, misrepresentations, misleading statements and deceptive practices and, thus, constitute multiple, separate violations of Minn. Stat. § 325F.69.

118.    Defendants concealed the defective nature of their Siding even after members of the Class began to report problems. Indeed, Defendants continue to affirmatively misrepresent and conceal from its dealers, distributors, and the public, the true nature of the Siding. These omissions and misrepresentations constitute the use of fraud, false promises, misrepresentations, misleading statements and deceptive practices and, thus, constitute multiple, separate violations of Minn. Stat. § 325F.69.

119.    Defendants knew or should have known the Siding was defectively designed and/or manufactured, would fail prematurely, were not suitable for their intended use, and otherwise were not as warranted and represented by Defendants. The fact that Defendants' Siding fails prematurely is a material fact, the omission of which

has the tendency or capacity or is likely to mislead or deceive Plaintiff and Class Members, and is a fact which could not reasonably be known by Plaintiff and Class Members. These omissions constitute the use of fraud, false promises, misrepresentations, misleading statements and deceptive practices and, thus, constitute multiple, separate violations of Minn. Stat. § 325F.69.

120.    In connection with the manufacturing, warranting, advertising, marketing and sale of Defendants' Siding, Defendants made the material omissions and misrepresentations set forth in this Complaint in its warranty, advertising and other promotional materials disseminated by or on behalf of Defendants in Minnesota.

121.    Defendants' omissions and misrepresentations set forth in this Complaint are material in that they relate to information that would naturally affect the purchasing decisions or conduct of purchasers, including Plaintiff and Class Members, regarding Defendants' Siding.

122.    Defendants had a duty to disclose to Plaintiff and members of the Classes the latent defect in the Siding at the time of sale and during responses to complaints related to reported problems with the Siding, as the facts were material to Plaintiff's and the Class Members' transactions; because it made contrary representations and statements, including that the Siding was defect free; because Defendants, as the parties with knowledge of the defect, knew that Plaintiff and members of the Class were entering transactions and acting on Defendants' statements during communications pertaining to reported problems with the Siding, under a mistake as to the fact of the defective design and/or manufacture of the Siding; because the fact of the defective nature of the design

was peculiarly and exclusively within Defendants' knowledge and the mistaken parties, Plaintiff and Class members, could not reasonably be expected to discover it; and on account of the objective circumstances, Plaintiff and the members of the Class reasonably expected disclosure of the fact of the Defect.

123.    The facts concealed and/or not disclosed by Defendants to Plaintiff and the Classes are material facts in that such facts would naturally affect the conduct of purchasers and a reasonable person would have considered those facts to be important in deciding whether or not to purchase Defendants' Siding and/or a home with the Siding.

124.    The facts concealed and/or not disclosed by Defendants to Plaintiff and the Classes are material facts in that such facts would naturally affect the conduct of purchasers and a reasonable person would have considered those facts to be important in deciding whether or not to take action in response to Defendants' misrepresentations during communications related to complaints, including whether to: (1) repair or replace the Siding out-of-pocket; (2) whether to sign waivers or releases of liability for partial remedial work or compensation being offered; and (3) whether to pursue action against Defendants where Defendants have affirmatively represented that the cause of the problems related to installation errors and not defects in the Siding.

125.    Had Plaintiff and the Class Members known of the defective nature of Defendants' Siding, they would not have purchased the Siding or the home with the Siding, or would have paid less for their Siding or the homes.

126.    Defendants possessed knowledge of the Siding's defective nature prior to bringing the product to market. Defendants fraudulently, negligently, recklessly and/or

intentionally concealed and/or failed to disclose the true nature of the design and/or manufacturing defect in their Siding for the purpose of inducing Plaintiff and the Classes, and their agents, to rely thereon, and Plaintiff and the Class, and their agents, justifiably relied to their detriment upon the truth and completeness of Defendants' representations about their Siding. Plaintiff and the Class relied on Defendants' disclosure of all materials facts and not omission of any material information regarding Defendants' Siding, both at the time of purchase of the Siding or the home, and when communicating with Defendants to report damage due to the defective nature of the Siding.

127.    Defendants' fraudulent and deceptive practices repeatedly occurred in Defendants' trade or business and were capable of deceiving a substantial portion of the purchasing public.

128.    As a direct and proximate cause of Defendants' false and deceptive misrepresentations and omissions regarding their Siding, Plaintiff has suffered actual injuries in that his Siding has failed prematurely. Class Members have also suffered actual injury in that their Siding has failed prematurely and/or Class Members are reasonably certain to suffer actual injury well in advance of the represented and expected life of the Siding, as the failure process has begun to manifest in their Siding.

129.    Separate from, and in addition to, their actual damages, Plaintiff and Class Members' expectations were frustrated as a result of Defendants' omissions and misrepresentations, and Plaintiff and Class Members did not receive what they expected to receive, which injury constitutes a loss. Plaintiff and Class Members are thus entitled to recover the difference between the actual value of the Siding and the value the Siding

would have possessed had Defendants' representations about the quality, durability, and service life of the Siding been true.

130.    As a result of Defendants' unlawful conduct, Plaintiff and Class Members were injured and suffered damages. Plaintiff and Class Members are entitled to recover their actual damages, and costs and disbursements, including costs of investigation and reasonable attorneys' fees, as well as injunctive relief and other equitable relief, including restitution, as determined by the Court, pursuant to Minnesota law, including Minn. Stat. §§ 8.31, subd. 1 and 3a. and 325F.69.

## COUNT II
## VIOLATIONS OF THE MINNESOTA
## UNIFORM DECEPTIVE TRADE PRACTICES ACT

131.    Plaintiff individually and on behalf of all others similarly situated, adopts and incorporates by reference all allegations contained in the prior paragraphs as though fully set forth herein.

132.    Minn. Stat. § 325D.44, Subdivision 1 provides, in part, as follows:

Subdivision 1. A person engages in a deceptive trade practice when, in the course of business, vocation, or occupation, the person:

…

(5)    represents that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have…;

…

(7)    represents that goods are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another . . .; or

…

(13)    engages in any other conduct which similarly creates
likelihood of confusion or of misunderstanding.

133.    Defendants' business practices, in manufacturing, advertising, marketing and selling their Siding, in misrepresenting material facts, including that the Siding is defect free, that the Siding will last for at least 50 Years, and that problems associated with the Siding are not due to a defect, constitute multiple, separate violations of Minn. Stat. § 325D.44, subd. 1 (5), (7) and (13), including:

a.    Falsely representing that their Siding has characteristics, uses, benefits or qualtities of being defect free, when, in fact, they are not, and expected to last for the represented lifetimes of the products, when, in fact, it does not;

b.    Falsely representing that the Siding is of a particular standard, quality or grade when, in fact, it is not;

c.    Creating the likelihood of confusion or of misunderstanding among consumers about the nature and quality of their Siding, including that it is defect free and will last the represented product lifetimes, when, in fact, it is not and does not.

134.    Defendants' business practices, in manufacturing, advertising, marketing and selling their Siding while misrepresenting material facts, including that the Siding is defect free, and failing to disclose, concealing, suppressing, and omitting material information concerning the defect in their Siding and the true, lower life expectancy of the products, constitute multiple, separate violations of Minn. Stat. § 325D.44, subd. 1 (5), (7) and (13).

135.    Defendants engaged in the above conduct in the course of Defendants' business.

136.    As a result of Defendants' unlawful conduct, Plaintiff and Class Members were injured and suffered damages, and are entitled to recover their actual damages, costs and disbursements, including costs of investigation and reasonable attorneys' fees, as well as injunctive relief and other equitable relief, including restitution, as determined by the Court, pursuant to Minnesota law, including Minn. Stat. §§ 8.31, subd. 1 and 3a. and 325D.45.

## COUNT III
## VIOLATIONS OF THE MINNESOTA
## UNLAWFUL TRADE PRACTICES ACT

137.    Plaintiff individually and on behalf of all others similarly situated, adopts and incorporates by reference all allegations contained in the prior paragraphs as though fully set forth herein.

138.    Minn. Stat. § 325D.13 provides, in part, as follows:

> No person shall, in connection with the sale of merchandise, knowingly misrepresent, directly or indirectly, the true quality, ingredients or origin of such merchandise.

139.    Defendants knowingly misrepresented and concealed the true quality of their Siding in connection with the sale of that merchandise.

140.    Defendants knowingly misrepresented that their Siding is defect free and the life expectancy of their Siding.

141.    Defendants knowingly concealed from and failed to disclose to Plaintiff and Class Members, in connection with the sale of their Siding, material information, including the defective nature of the products and the true, lower life expectancy of Defendants' Siding.

142.   Defendants' omissions and misrepresentations had the tendency or capacity to deceive or mislead Plaintiff, Class Members, their agents, and a substantial segment of the public.

143.   Defendants' omissions and misrepresentations were material because they related to facts that would naturally affect the conduct of purchasers and that a reasonable person, including Plaintiff and Class Members, and their agents, would have considered important in deciding whether to purchase Defendants' Siding or the homes with the Siding.

144.   Defendants caused their Siding to enter into interstate commerce.

145.   As a result of Defendants' unlawful conduct, Plaintiff and Class Members were injured and suffered damages, and are entitled to recover their actual damages, costs and disbursements, including costs of investigation and reasonable attorneys' fees, as well as injunctive relief and other equitable relief, including restitution, as determined by the Court, pursuant to Minnesota law, including Minn. Stat. §§ 8.31, subd. 1 and 3a. and 325D.15.

## COUNT IV
## NEGLIGENCE

146.   Plaintiff individually and on behalf of all others similarly situated, adopts and incorporates by reference all allegations contained in the prior paragraphs as though fully set forth herein.

147.   Defendants have a duty to exercise reasonable care in the manufacturing, processing, distributing, delivering, supplying, inspecting, marketing and/or selling the

Siding that Defendants place into the stream of commerce, including a duty to assure that the product will perform as intended and will not cause damage as described herein.

148.    Defendants breached their duty by failing to exercise ordinary care in the manufacturing, processing, distributing, delivering, supplying, inspecting, marketing and/or selling the Siding that Defendants placed into the stream of commerce in that Defendants knew or should have known that the product was defective, did not function as intended, and/or created a high risk of unreasonable, dangerous, foreseeable consequences.

149.    The negligence of Defendants, their agents, servants, and/or employees, includes, but is not limited to, the following acts and/or omissions:

a.    designing, manufacturing, processing, distributing, delivering, supplying, inspecting, marketing and/or selling Siding without thoroughly testing it;

b.    selling Siding without performing proper and sufficient tests to determine the dangers of premature failure to home owners, builders, installers, and other consumers;

c.    negligently failing to adequately and correctly warn Plaintiff, Class Members, and the public, of the risks, potential damage, and dangers of premature failure of Defendants' Siding;

d.    negligently failing to recall or otherwise notify users at the earliest date that it became known that the Siding was, in fact, defective and would prematurely fail;

e.    negligently advertising and recommending the use of the Siding without sufficient knowledge as to its manufacturing defect and premature failure;

f.    negligently representing that Defendants' Siding was suitable for its intended purpose when, in fact, it is too brittle to serve as an exterior building product;

30

g.   negligently designing and processing the Siding in a manner that would prematurely fail; and

h.   in other such ways that may be proven at trial.

150.   Defendants were negligent in the design, manufacturing, processing, distributing, delivering, supplying, inspecting, marketing and/or selling of Defendants' Siding in that they:

a.   failed to use due care in designing and manufacturing the Siding so as to avoid the premature failure when the Siding was used for its intended purpose;

b.   failing to conduct adequate testing to determine the useful life of the Siding; and

c.   failing to warn Plaintiff, prior to actively encouraging the purchase of the Siding either directly or indirectly, orally or in writing, about the defective nature of the product; and

d.   in other such ways that may be proven at trial.

151.   Upon information and belief, despite the fact that Defendants knew or should have known that the Siding was defective and would prematurely fail, Defendants continued to design, manufacture, process, distribute, deliver, supply, market and/or sell Siding to Plaintiff, Class Members, and/or the consuming public.

152.   Defendants knew or should have known that consumers such as Plaintiff and Class Members would foreseeably suffer damage to the Siding and Plaintiff and Class Members' homes as a result of Defendants' acts and omissions, as well as failure to exercise ordinary care, as well as Defendants' negligent design and formulation of the Siding, as set forth herein.

153.    Defendants' negligence was the proximate cause of Plaintiff's and Class Members' damages, injuries, harm, and economic loss which they suffered and will continue to suffer.

154.    By reason of the foregoing, Plaintiff and Class Members experienced and/or are at risk of premature failure of the Siding.

155.    As a direct and proximate result of Defendant's misconduct, Plaintiff and Class Members have been damaged in an amount to be proven at trial.

**COUNT V**
**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**

156.    Plaintiff individually and on behalf of all others similarly situated, adopts and incorporates by reference all allegations contained in prior paragraphs, as though fully set forth herein.

157.    Defendants entered into contracts with retailers, suppliers and/or contractors to sell the Siding to be installed at Plaintiff's and the Class Members' properties.

158.    Plaintiff and Class Members are intended third-party beneficiaries of those contracts as it was the clear and manifest intent of Defendants that the contracts were to primarily and directly benefit buyers, like Plaintiff and Class Members, when the Siding passed to homeowners through the direct sale of the Siding, as well as through the sale of homes containing the Siding.

159.    Defendants warranted that their Siding was merchantable and reasonably fit for their ordinary purpose as an exterior building product, was free of defects, and would not cause damage as set forth herein.

160.    Defendants breached the implied warranty of merchantability by selling Siding that was and is defective, and not reasonably fit for its ordinary purpose as an exterior building product and fails long prior to its 50-Year expected service life.

161.    Defendants' defective Siding causes and continues to cause damage as described more fully herein.

162.    As a result of Defendants' breach of the implied warranty of merchantability, Plaintiff and Class Members have suffered and continue to suffer damages.

**COUNT VI**
**BREACH OF IMPLIED WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE**

163.    Plaintiff individually and on behalf of all others similarly situated, adopts and incorporates by reference all allegations contained in prior paragraphs as though fully set forth herein.

164.    Defendants entered into contracts with retailers, suppliers and/or contractors to sell the Siding that was installed at Plaintiff's and the Class Members' properties.

165.    Plaintiff and the Class Members are intended third party beneficiaries of those contracts as it was the clear and manifest intent of Defendants that the contracts were to primarily and directly benefit Plaintiff and the Class Members when the Siding

passed to homeowners through the direct sale of the Siding, or through the sale of homes containing the Siding.

166. At the time Defendants entered into contracts with retailers, suppliers, and/or contractors, Defendants knew and had reason to know that the Siding was being purchased for the particular purpose of being installed as an exterior building product on Plaintiff's and the Class Members' homes.

167. Defendants warranted that the Siding was fit for the particular purpose of being installed on Plaintiff's and Class Members' homes as an exterior building product, and that the Siding would not fail prior to 50-Years of useful service life.

168. Plaintiff and the Class Members, directly or indirectly, relied on Defendants' representations and warranties that their Siding was suitable for the particular purpose of being installed at Plaintiff's and Class Members' properties, and that the Siding would not fail before 50-Years of useful service life.

169. Defendants breached the implied warranty of fitness for a particular purpose by selling Siding that was defective and not reasonably fit for its ordinary purpose.

170. Defendants' defective Siding causes and continues to cause damage as described more fully herein.

171. As a result of Defendants' breach of the implied warranty of fitness for a particular purpose, Plaintiff and Class Members have suffered and continue to suffer damages.

## COUNT VII
## FRAUDULENT MISREPRESENTATION

172.    Plaintiff individually and on behalf of all others similarly situated, adopts and incorporates by reference all allegations contained in prior paragraphs as though fully set forth herein.

173.    Defendants falsely and fraudulently represented to Plaintiff, Class members, and/or the consuming public in general that Defendants' Siding would be free from defects, fit for its customary and normal use as an exterior building product, and not fail prior to the 50-Year useful life touted by Defendants.

174.    Further, when Defendants were contacted regarding the damages experienced resulting from the Defect in the Siding, Defendants represented that the damage was not related to a defect in the product but was the result of mishandling or installation errors.

175.    That representation made by Defendants is false.

176.    Defendants, upon information and belief, knew those representations to be false and/or they willfully, wantonly, and recklessly disregarded whether the representations were true.

177.    Defendants made these representations with the intent of defrauding and deceiving Plaintiff, Class Members and/or the consuming public. The representations evinced reckless and willful indifference to the safety and welfare of Plaintiff and Class Members.

178.   At the time the aforesaid representations were made by Defendants, Plaintiff and Class Members were unaware of the falsity of said representations and reasonably believed the statements to be true.

179.   In reliance upon said representations, the Plaintiff's and Class Members' properties were built using Defendants' Siding and sustained damage and injury and/or increased risk of sustaining damage and injury in the future.

180.   Defendants knew and were aware, or should have been aware, that the Siding was defective and not fit for its customary and normal use, would prematurely fail, and the resulting damages were not caused by mishandling or installation errors.

181.   Defendants knew, or should have known, that the Siding had a potential to and likely would cause severe damage and injury to property owners and their homes.

182.   Defendants brought the Siding to the market and acted fraudulently, wantonly, and maliciously to the detriment of the Plaintiff and Class Members.

183.   By reason of the foregoing, Plaintiff and Class Members suffered, and continue to suffer, damage and injury.

**COUNT VIII**
**FRAUDULENT CONCEALMENT**

184.   Plaintiff individually and on behalf of all others similarly situated, adopts and incorporates by reference all allegations contained in prior paragraphs as though fully set forth herein.

185.   Defendants knew or should have known that the Siding was defective in design and formulation, was not fit for its ordinary and intended use, and failed to

perform in accordance with advertisements, marketing materials and warranties disseminated by Defendants, and with the reasonable expectations of ordinary consumers.

186.    Defendants fraudulently concealed from and/or intentionally failed to disclose to Plaintiffs and the Class that the Siding is defective, would prematurely fail, and that the damages were not the result of mishandling or installation errors.

187.    Defendants had exclusive knowledge of the defective nature of the Siding at the time of sale and at all other relevant times. The Defect is latent and not something that Plaintiff or Class Members, in the exercise of reasonable diligence, could have discovered independently prior to purchase.

188.    Defendants had the capacity to, and did, deceive Plaintiff and Class Members into believing that they were purchasing Siding or homes with Siding free from defects.

189.    Defendants undertook active and ongoing steps to conceal the Defect. Plaintiff is not aware of anything in Defendants' advertising, publicity, or marketing materials that disclosed the truth about the Defect, despite Defendants' awareness of the problem.

190.    The facts concealed and/or not disclosed by Defendants to Plaintiff and Class members are material facts in that a reasonable person would have considered them important in deciding whether to purchase (or to pay the same price for) the Siding or the homes containing the Siding from their builders or prior owners of the homes.

191.    Defendants intentionally concealed and/or failed to disclose material factors for the purpose of inducing Plaintiff and the Class to act thereon.

192.    Plaintiff and the Class justifiably acted or relied upon the concealed and/or nondisclosed facts to their detriment, as evidenced by their purchase of the Siding and homes containing the Siding.

193.    Plaintiff and Class Members suffered a loss of money in an amount to be proven at trial, *inter aila*, as a result of Defendants' fraudulent concealment and nondisclosure because: (a) they would not have purchased the Siding on the same terms if the true facts concerning the defective Siding had been known; (b) they would not have paid a price premium for the Siding if they knew of the Defect and that the Siding was likely to fail prematurely, warp, break, crack, etc.; and (c) the Siding did not perform as promised.

194.    By reason of the foregoing, Plaintiff and Class Members suffered, and continue to suffer damage and injury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, pray for a judgment against Defendants as follows:

a.    For an order certifying the Class, pursuant to Fed. R. Civ. P. Rule 23, appointing Plaintiff as representative of the Class, and appointing the law firms representing Plaintiff as counsel for the Class;

b.    For compensatory damages sustained by Plaintiff and the Class;

c.    For payment of costs of suit incurred;

d.    For both pre-judgment and post-judgment interest on any amounts awarded;

38

e.    For payment of reasonable attorneys' fees and expert fees as may be allowable under applicable law; and

f.    For such other and further relief as the Court may deem just and proper.

## **JURY DEMAND**

Plaintiff individually and on behalf of Class Members, hereby demand a trial by jury as to all issues so triable.

Dated: December 28, 2018

/s/ Michelle J. Looby
Daniel E. Gustafson (202241)
Jason S. Kilene (024773X)
Michelle J. Looby (0388166)
Raina C. Borrelli (392127)
**Gustafson Gluek PLLC**
120 South Sixth Street, Suite 2600
Minneapolis, MN 55402
Telephone: (612) 333-8844
Facsimile: (612) 339-6622
Email: dgustafson@gustafsongluek.com
        jkilene@gustafsongluek.com
        mlooby@gustafsongluek.com
        rborrelli@gustafsongluek.com